O

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

APRIL DESIREE BEECH,

          Plaintiff,

      v.

CAROLYN W. COLVIN,
Acting Commissioner of Social
Security,

          Defendant.

)
)
)
)
)
)
)
)
)
)
)
)

NO. SACV 13-00782-MAN

MEMORANDUM OPINION

AND ORDER

Plaintiff filed a Complaint on May 16, 2013, seeking review of the denial of plaintiff's application for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). On June 11, 2013, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. The parties filed a Joint Stipulation on January 22, 2014, in which: plaintiff seeks an order reversing the Commissioner's decision and remanding this case for the payment of benefits or, alternatively, for further administrative proceedings; and the Commissioner requests that her decision be affirmed or, alternatively, remanded for further administrative proceedings. The Court has taken the parties' Joint Stipulation under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff filed an application for a period of disability and DIB on April 15, 2010, and SSI on April 30, 2010. (Administrative Record ("A.R.") 47.) Plaintiff claims to have been disabled since March 28, 2009, due to degenerative/bulging discs, high blood pressure/heart pacemaker/systematic lupus/spinal stenosis, sleep apnea, spinal meningitis, pneumonia, obesity/feet problems, sick sinus syndrome, migraines/anxiety, and past manic depression/bipolar. (A.R. 258.) Plaintiff has past relevant work ("PRW") experience as an administrative assistant, telephone solicitor (door service), and customer service representative (for the bank). (A.R. 62.)

After the Commissioner denied plaintiff's claim initially and upon reconsideration, plaintiff requested a hearing. (A.R. 47.) On December 6, 2011, plaintiff, who was represented by a non-attorney, appeared and testified at a hearing before Administrative Law Judge Helen E. Hesse (the "ALJ"). (*Id.*) Medical expert Joseph E. Jensen and vocational expert Susan L. Allison also testified at the hearing. (*Id.*) On February 8, 2012, the ALJ denied plaintiff's claim (A.R. 47-63), and the Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision (A.R. 1-7). That decision is now at issue in this action.

## SUMMARY OF ADMINISTRATIVE DECISION

In her February 8, 2012 decision, the ALJ found that plaintiff met the insured status requirements of the Social Security Act through December 31, 2014, and plaintiff has not engaged in substantial gainful activity since March 28, 2009, the alleged onset date of her disability. (A.R. 49.) The ALJ determined that plaintiff has the severe impairments of: "systemic lupus erythemotosis, degenerative disc disease of the lumbar and cervical spines with stenosis, and morbid obesity." (A.R. 50.) The ALJ also determined that plaintiff does not have any severe impairment related to her "hypertension, deep vein thrombosis, cellulitis, sleep apnea, spinal meningitis, history of migraine headaches, pneumonia, sick sinus syndrome (coronary syndrome)

1  and hammer toes and plantar fasciitis." (A.R. 50-51.) The ALJ concluded that plaintiff does not

2  have an impairment or combination of impairments that meets or medically equals one of the

3  listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d),

4  404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (A.R. 53.)

5

6       After reviewing the record, the ALJ determined that plaintiff has the residual functional

7  capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b)

8  with the following limitations:

9

10      she is able to sit six hours out of an eight hour day, and stand or walk two hours out

11      of an eight hour day, with normal workday breaks; she is able to occasionally lift 20

12      pounds, frequently lift 10 pounds, occasionally carry 10 pounds, and frequently

13      carry less than 10 pounds; she can occasionally use her lower extremities for

14      operating foot controls; she can occasionally climb stairs, bend, balance, stoop,

15      kneel, crouch, or crawl; she is precluded from squatting, climbing

16      ladders/ropes/scaffolds, or working at unprotected heights; she can frequently

17      perform gross and fine manipulation, occasionally reach at or above shoulder level;

18      and she is precluded from concentrated exposure to temperature extremes, hot and

19      cold.

20

21  (A.R. 55.) In making this finding, the ALJ considered the subjective symptom testimony of

22  plaintiff, which the ALJ found was not entirely credible, as well as the medical evidence and

23  opinions of record. (A.R. 55-61.)

24

25      The ALJ found that plaintiff was able to perform her PRW as an "administrative assistant,"

26  "telephone solicitor (donor service), and "customer service representative (for the bank)," because

27  "this work does not require the performance of work-related activities precluded by [plaintiff]'s

28  [RFC]." (A.R. 62.) Accordingly, the ALJ concluded that plaintiff has not been under a disability,

as defined in the Social Security Act, from March 28, 2009, the alleged onset date, through February 8, 2012, the date of the ALJ's decision.  (A.R. 63.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.* (citation omitted). The "evidence must be more than a mere scintilla but not necessarily a preponderance." Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003).  "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice."  Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988); *see also* Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely."  Orn, 495 F.3d at 630; *see also* Connett, 340 F.3d at 874.  The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential

4

1   to the ultimate nondisability determination.'" <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 885 (9th

2   Cir. 2006) (quoting <u>Stout v. Comm'r</u>, 454 F.3d 1050, 1055 (9th Cir. 2006)); *see also* <u>Burch</u>, 400

3   F.3d at 679.

5                                     **DISCUSSION**

7        Plaintiff claims that the ALJ improperly failed to:  (1) find her impairments of myofascial

8   pain syndrome and history of migraine headaches severe at step two; (2) consider the opinions

9   of treating physicians Dr. Khurana and Dr. Stoney; and (3) consider her subjective complaints, as

10  well as the lay witness statements of her sister, Elisabeth Beech.  (Joint Stipulation ("Joint Stip.")

11  at 8.)

13        **I.**     **On Remand, The ALJ Must Reconsider Her Step Two Analysis With**

14              **Respect To One Of Plaintiff's Allegedly Severe Impairments.**

16        Plaintiff argues that the ALJ improperly failed to find her myofascial pain syndrome and

17  history of migraine headaches to be severe impairments at step two. (Joint Stip. at 8-11.)  The

18  Court finds that the ALJ erred in finding that plaintiff's myofascial pain syndrome was not a severe

19  impairment.

21        At step two of the sequential evaluation process, the ALJ is tasked with identifying a

22  claimant's "severe" impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416. 920(a)(4)(ii),

23  416.920(c).  A severe impairment is one that "significantly limits [a claimant's] physical or mental

24  ability to do basic work activities."[1]  20 C.F.R. §§ 404.1520(c), 416.920(c).  Despite use of the

26         [1]      Basic work activities are "the abilities and aptitudes necessary to do most jobs." 20
27  C.F.R. §§ 404.1521, 416.921(b).  Examples of such activities include: (1) "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling"; (2) the capacity for "seeing, hearing, and speaking"; (3) "[u]nderstanding, carrying out, and remembering
28  simple instructions"; (4) the "[u]se of judgment"; (5) "[r]esponding appropriately to supervision,

1   term "severe," most circuits, including the Ninth Circuit, have held that "the step-two inquiry is

2   a *de minimis* screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273,

3   1290 (9th Cir. 1996). Accordingly, "[a]n impairment or combination of impairments may be found

4   'not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal

5   effect on [a claimant's] ability to work.'" Webb v. Barnhart, 433 F.3d 683, 686–87 (9th Cir. 2005)

6   (citation omitted; emphasis in original).

7

8                       A.    Myofascial Pain Syndrome

9

10      As noted above, the ALJ found that plaintiff's systemic lupus erythemotosis, degenerative

11  disc disease of the lumbar and cervical spines with stenosis, and morbid obesity constituted

12  "severe" impairments at step two. (A.R. 50.) However, the ALJ did not find plaintiff's impairment

13  of myofascial pain syndrome to be "severe." (A.R. 50-51.)

14

15      The medical records confirm that plaintiff suffered from myofascial pain syndrome. (A.R.

16  390, 978, 981.) Significantly, on October 23, 2011, treating rheumatologist Dr. Krishan S.

17  Khurana diagnosed plaintiff with myofascial pain syndrome and determined that the condition

18  would contribute to her inability to work full-time, even in a sedentary position. (A.R. 978.) This

19  evidence, of which the ALJ was aware (A.R. 60), strongly suggests that plaintiff's myofascial pain

20  syndrome would have more than a minimal effect on her ability to function in the workplace. The

21  ALJ's failure to give specific and legitimate reasons for rejecting Dr. Khurana's opinion regarding

22  the functional limitations stemming from plaintiff's myofascial pain syndrome or to find that

23  medical condition to be severe at step two of the sequential evaluation process constitutes error.

24  ///

25  ///

26

27  ─────────────────────

28  co-workers and usual work situations"; and (6) "[d]ealing with changes in a routine work setting."
    *Id.*

6

1    Moreover, the ALJ's error cannot be deemed harmless.  In general, an ALJ's failure to
2    discuss a claimant's impairment at step two may be deemed harmless only when the ALJ's error
3    did not prejudice a claimant at later steps in the sequential evaluation process.  In Burch, for
4    example, the Ninth Circuit assumed, without deciding, that it was legal error for the ALJ not to
5    discuss plaintiff's obesity in his step two analysis.  400 F.3d at 682.  The Ninth Circuit concluded,
6    however, that the assumed error was harmless, because it would not have impacted the ALJ's
7    analysis at either step four or five of the evaluation process.  Specifically, the Ninth Circuit found
8    that, for purposes of step four, plaintiff failed to proffer any evidence of functional limitations due
9    to her obesity that would have impacted the ALJ's analysis.  Id. at 683.  Further, at step five, the
10   Ninth Circuit found that no prejudice occurred, because the ALJ "adequately considered [plaintiff's]
11   obesity in his RFC determination," i.e., there was no "functional limitations as a result of
12   [plaintiff's] obesity that the ALJ failed to consider."  Id. at 684; see also Lewis v. Astrue, 498 F.3d
13   909, 911 (9th Cir. 2007) (finding that any error the ALJ committed in failing to list plaintiff's
14   bursitis at step two was harmless, because the ALJ "extensively discussed" plaintiff's bursitis and
15   "considered any limitations posed by the bursitis at [s]tep [four]").

16

17   In this case, unlike in Burch and Lewis, the Court cannot conclude that the ALJ's failure to
18   consider plaintiff's myofascial pain syndrome and her resulting limitations is harmless error.  As
19   discussed in detail below, the ALJ failed to give the requisite specific and legitimate reasons for
20   rejecting Dr. Khurana's opinion regarding the various work limitations stemming from plaintiff's
21   impairments, and because Dr. Khurana opined that plaintiff's myofascial pain syndrome would
22   preclude her from working full-time even in a sedentary position, that opinion, if credited, would
23   have impacted the ALJ's analysis at steps four and five of the evaluation.  Accordingly, the Court
24   cannot find the ALJ's error to be harmless.  See Stout, 454 F.3d at 1055 (finding an error to be
25   harmless when it "was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability
26   conclusion").  On remand, the ALJ must revisit her severity determination with respect to plaintiff's
27   myofascial pain syndrome.
28   ///

1          B.    History of Migraine Headaches

2

3          Plaintiff also alleges disability, in part, due to her history of migraine headaches.  (A.R.

4   258.)  The medical records do confirm that plaintiff has suffered from a history of migraine

5   headaches.  (A.R. 373, 377, 386, 389, 428, 608, 649, 651.)  In fact, the ALJ acknowledged that

6   plaintiff had a medical impairment of a history of migraine headaches, but found it to be non-

7   severe.  (A.R. 50.)

8

9          On July 20, 2010, consultative examiner Dr. Rocely Ella-Tamayo conducted a complete

10  internal medicine evaluation of plaintiff.  (A.R. 603-09.)  Based on plaintiff's history, a physical,

11  musculoskeletal and neurological examination of plaintiff, and diagnostic impressions, Dr. Ella-

12  Tamayo diagnosed plaintiff with, *inter alia*, a history of migraine headaches.  (*Id.*)  Dr. Ella-

13  Tamayo then opined that plaintiff:  would be restricted to pushing, pulling, lifting and carrying 20

14  pounds occasionally and 10 pounds frequently; could stand and walk two to four hours in an

15  eight-hour workday with normal breaks, but would need an assistive device for prolonged

16  ambulation; could kneel occasionally, but would be unable to squat; and would have no sitting

17  restrictions.  (A.R. 608.)  Because it can be inferred that Dr. Ella-Tamayo assessed these

18  functional limitations, due, in part, to plaintiff's migraine headaches, Dr. Ella-Tamayo's opinion

19  suggests that plaintiff's migraine headaches would have more than a *de minimus* impact on her

20  ability to perform basic work activities.  Thus, it was error for the ALJ to classify plaintiff's history

21  of migraine headaches as non-severe.  The Court finds the error to be harmless, however.

22

23         As noted above, where an ALJ fails to find an asserted impairment severe at step two, but

24  nonetheless accounts for that impairment at step four in the RFC analysis, any alleged error in

25  failing to find the disorder "severe" at step two is harmless.  *See* Lewis, 498 F.3d at 911.  Here,

26  the ALJ gave "great weight" to Dr. Ella-Tamayo's opinion in determining plaintiff's RFC.  (A.R. 59.)

27  Thus, any error in failing to include plaintiff's migraine headaches as a severe impairment at step

28  two was harmless error.

8

However, as this case is being remanded to reconsider several issues discussed herein, the ALJ should reassess plaintiff's history of migraine headaches as severe at step two or provide appropriate reasons for failing to do so.

## II.   The ALJ Failed To Give Specific And Legitimate Reasons For Rejecting The Opinions Of Dr. Khurana and Dr. Stoney.

Plaintiff contends that the ALJ failed to provide specific and legitimate reasons for rejecting the opinions of treating physicians Dr. Khurana and Dr. Stoney.  (Joint Stip. at 20.)  The Court agrees.

### A.   Legal Standard

An ALJ is obligated to take into account all medical opinions of record.  20 C.F.R. §§ 404.1527(c), 416.927(c).  It is the responsibility of the ALJ to resolve conflicts in medical testimony and analyze evidence.  Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).  In the hierarchy of physician opinions considered in assessing a social security claim, "[g]enerally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's."  Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001).

The opinions of treating physicians are entitled to the greatest weight, because the treating physician is hired to cure and has a better opportunity to know and observe the claimant.  Magallanes, 881 F.2d at 751.  When a treating or examining physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  When contradicted by another doctor, a treating or examining physician's opinion may only be rejected if the ALJ provides "specific and legitimate" reasons supported by substantial evidence in the record.  Id.; see also Ryan v. Comm'r of Soc. Sec., 528

1   F.3d 1194, 1198 (9th Cir. 2008); <u>Orn</u>, 495 F.3d at 632.

2

3          B.     <u>Analysis</u>

4

5             1.     Dr. Khurana[2]

6

7      On October 23, 2011, Dr. Khurana completed a "Physical Capacities Evaluation." (A.R. 975-

8 78.)  In the evaluation, Dr. Khurana noted that, in an 8-hour workday, plaintiff:  could occasionally

9 lift/carry up to five pounds; occasionally climb, balance, stoop, kneel, crouch, crawl, and reach

10 above her shoulder level; and would be severely limited in activities involving unprotected heights,

11 being around moving machinery, exposure to marked changes in temperature and humidity, and

12 driving automotive equipment, but only moderately limited with respect to exposure to dust,

13 fumes, gases, and gasoline.  (A.R. 978.)  Plaintiff could sit/stand/walk one hour with alternate

14 sitting and standing; could do simple grasping, but not pushing and pulling, and fine manipulation

15 with no repetitive hand motion tasks; and could not use her feet for repetitive movements.  (A.R.

16 975.)  He noted that plaintiff is "exhausted all the time," "has myofascial pain syndrome," and "is

17 on "prednisone which can cause muscle weakness."  (A.R. 978.)  Dr. Khurana concluded that

18 plaintiff suffers from pain which would prevent her working full-time, even in a sedentary

19 occupation.  (A.R. 976.)  Finally, Dr. Khurana opined that, due to plaintiff's pain and the side

20 effects of her medication, she would be moderately limited in her attention and concentration that

21 would preclude her from performing skilled work tasks.  (A.R. 977.)

22

23      In her decision, the ALJ rejected the opinion of Dr. Khurana, as set forth in the Physical

24 Capacities Evaluation, because:  (1) he is not board certified; (2) he is not familiar with the

25

26 ─────────────

27 [2]     Plaintiff was referred to rheumatologist Dr. Krishan S. Khurana by her primary treating physician Dr. Dennis Downs.  (A.R. 118, 969.)  Plaintiff testified at the hearing that she sees Dr. Khurana every six weeks.  (A.R. 117-18.)

28

1   Agency's disability guidelines; (3) his opinion is inconsistent with plaintiff's medical records;  (4)

2   his opinion is inconsistent with plaintiff's daily activities; and (5) his opinion that plaintiff is unable

3   to work is a finding reserved for the Commissioner.  (A.R. 60.)

4

5          The ALJ's first reason is not legitimate.  The ALJ rejected Dr. Khurana's opinion, because

6   he is not "board certified in orthopedic surgery, internal medicine, or rheumatology."  (*Id.*)

7   Although more weight is generally given to the opinion of a specialist about medical issues related

8   to his or her area of specialty than to the opinion of a source who is not a specialist, this principle

9   is not dispositive of whether the ALJ correctly assessed Dr. Khurana's opinion.  The ALJ is

10  indisputably obligated to take into account all medical opinions of record, and the absence of a

11  board-certified specialty is not, in and of itself, a reason to reject a treating doctor's opinion.  *See*

12  Lester, 81 F.3d at 833 ("The treating physician's continuing relationship with the claimant makes

13  him especially qualified to evaluate reports from examining doctors, to integrate the medical

14  information they provide, and to form an overall conclusion as to functional capacities and

15  limitations, as well as to prescribe or approve the overall course of treatment.").  Thus, that Dr.

16  Khurana was not board certified does not constitute a legitimate reason for rejecting the opinion

17  of Dr. Khurana, a treating physician who noted on the top of his Physical Capacities Evaluation

18  form that he specialized in rheumatology.  (See A.R. 975-78.)

19

20         The ALJ's second reason in rejecting Dr. Khurana's opinion -- *to wit*, that he is "not familiar

21  with the Agency's disability guidelines" -- is also not legitimate.  (A.R. 60.)  It is well established

22  that "[w]hen a treating physician's opinion is contradicted . . . , the ALJ must assess its

23  persuasiveness in light of specified factors, including the 'length of the treatment relationship and

24  the frequency of examination;' the 'nature and extent of the treatment relationship;' and the

25  treating opinion's consistency 'with the record as a whole.'"  Aranda v. Comm'r SSA, 405 Fed.

26  Appx. 139, 141 (9th Cir. 2010) (quoting Orn, 495 F.3d at 631); *see also* Lester, 81 F.3d at 833.

27  Thus, a demonstration of familiarity with Social Security disability guidelines by Dr. Khurana does

28  not appear to be a pre-requisite to the ALJ's consideration of Dr. Khurana's opinion.  Indeed, the

1    regulations require that the ALJ consider the opinions of *all* physicians.  *See* 20 C.F.R. §§
2    404.1527(c), 416.927(c).

3

4         Next, the ALJ rejected Dr. Khurana's opinion because it was characterized as inconsistent
5    with plaintiff's activities of daily living, such as "doing chores, cooking meals, walking and driving."
6    (A.R. 60.)  Inconsistency between a treating physician's opinion and a claimant's daily activities
7    may be a specific and legitimate reason for rejecting the opinion.  *See* Bayliss v. Barnhart, 427
8    F.3d 1211, 1216 (9th Cir. 2005); Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001).
9    However, none of plaintiff's reported daily activities appears to exceed Dr. Khurana's opined
10   limitations.

11

12        In a July 15, 2010 "Functional Report - Adult" form, plaintiff stated that she needs to sit
13   down when she gets dressed and receives help to tie her shoes.  (A.R. 288.)  She only takes
14   showers with the help of her daughter, and she is unable to blow dry her hair due to pain and
15   fatigue.  (*Id.*)  Plaintiff experiences increased numbness in her legs when she is sitting on the
16   toilet and needs to use her cane or counter to support herself when standing up from the toilet.
17   (*Id.*)  Plaintiff is able to prepare simple meals; however, it takes her an hour to do so, because
18   she needs to sit down and take breaks while cooking.  (A.R. 289.)  Plaintiff relies on her daughter
19   to complete the majority of the household chores, but plaintiff helps with light chores such as
20   dusting, vacuuming, loading the dishes, and folding laundry, but she does so with difficulty.  (A.R.
21   289-90.)  Plaintiff is able to drive to her doctor appointments three times a week, but she prefers
22   to have someone with her when she leaves the house and to have someone else drive her to her
23   appointments.  (A.R. 290.)  Plaintiff does not do any grocery shopping.  (*Id.*)  Plaintiff is able to
24   pay bills and count change, but she needs her daughter to double check her math when balancing
25   her accounts and writing bill payments.  (A.R. 291.)  Plaintiff also stated that she uses a walker
26   or cane to ambulate a majority of the time.  (A.R. 292.)  Accordingly, such activities do not appear
27   to be inconsistent with Dr. Khurana's opinion, as a result, and it was improper for the ALJ to reject
28   his opinion on this ground.

1    The ALJ's fourth reason for rejecting the opinion of Dr. Khurana is impermissibly conclusory
2    and provides no specific reference to any inconsistencies between Dr. Khurana's opinion and
3    plaintiff's treatment records.   Rather, the ALJ merely states that Dr. Khurana's "opinion is
4    inconsistent with [plaintiff's] medical records." (A.R. 60); *see* Regennitter v. Comm'r of SSA, 166
5    F.3d 1294, 1299 (9th Cir. 1999) (noting that "conclusory reasons will not justify an ALJ's rejection
6    of a medical opinion"); McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989) ("[b]road and
7    vague" reasons for rejecting the treating physician's opinion do not suffice); Embrey v. Bowen,
8    849 F.2d 418, 421–22 (9th Cir. 1988) ("To say that medical opinions are not supported by
9    sufficient objective findings or are contrary to the preponderant conclusions mandated by the
10   objective findings does not achieve the level of specificity our prior cases have required . . . . The
11   ALJ must do more than offer his conclusions.  He must set forth his own interpretation and explain
12   why they, rather than the doctors', are correct.").   Further, Dr. Khurana's opinion appears to be
13   consistent with treating physician Dr. Stoney's opinion, which, as discussed below, the ALJ also
14   failed to properly consider.

15

16   The ALJ's final reason for rejecting the opinion of Dr. Khurana is misguided.  (A.R. 60.)
17   While it is true that a treating physician's opinion on the matter of ultimate disability is not
18   determinative or entitled to special weight, a treating physician's medical opinion must be
19   considered.  Boardman v. Astrue, 286 Fed. Appx. 397, 399 (9th Cir. 2008).  A medical opinion
20   "'reflect[s] judgments about the nature and severity of [a claimant's] impairment(s), including [a
21   claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite
22   impairment(s), and [a claimant's] physical or mental restrictions.'"  *Id.* (citation omitted).  Beyond
23   finding that plaintiff was disabled and/or unable to work -- a finding reserved for the ALJ -- Dr.
24   Khurana clearly expressed a medical opinion.   He described plaintiff's symptoms and the
25   restrictions on plaintiff's activity.  (*See* A.R. 975-78.)  Rather than affording proper weight to Dr.
26   Khurana's opinion, the ALJ improperly chose to ignore it simply because Dr. Khurana also
27   expressed an opinion regarding plaintiff's ultimate disability and residual functional capacity.
28   While this may be a specific reason to reject a treating physician's medical opinion, it is not a

1    legitimate one.

2

3        Accordingly, for the aforementioned reasons, the ALJ failed to properly reject the opinion

4    of Dr. Khurana.

5

6                    2.       Dr. Stoney[3]

7

8        On January 17, 2011, Dr. Stoney, completed a "Physical Capacities Evaluation." (A.R. 850-

9    53.)  In his evaluation, Dr. Stoney opined that plaintiff suffered from pain due to degenerative

10   joint disease of the spine with facet syndrome, fibromyalgia, and systemic lupus. (A.R. 852.)  He

11   opined that in an entire 8-hour day, plaintiff could:  sit/stand/walk less than one hour and would

12   need to alternate between sitting and standing; could do simple grasping but not pushing and

13   pulling, and fine manipulation; could do no repetitive movements of the feet; could occasionally

14   lift/carry five pounds; could never climb, balance, stoop, kneel, crouch, crawl and reach above

15   shoulder level; and would be restricted from activities involving unprotected heights, being around

16   moving machinery, exposure to marked changes in temperature and humidity, and driving an

17   automobile. (A.R. 850-51.)  Dr. Stoney also noted that plaintiff's pain is disabling to the extent

18   that it would prevent her from working full-time, even at a sedentary position.  (A.R. 852.)

19   Further, due to plaintiff's pain and side effects, Dr. Stoney opined that plaintiff would be severely

20   limited in the attention and concentration required for even simple, unskilled work tasks. (A.R.

21   977.)

22

23       On March 14, 2011, Dr. Stoney completed another "Physical Capacities Evaluation" with

24   the same responses set forth above.  (A.R. 906-09.)

25

26

27          [3]       Plaintiff testified, and there is evidence in there record, that plaintiff saw Dr. Scott
     Stoney for pain management once a month beginning in May 2010.  (A.R. 118, 583-84, 725-26,
28   856-68, 910-21.)

                                                    14

1      The ALJ gave Dr. Stoney's opinion "little weight" based on the same five grounds, verbatim,

2  upon which she rejected the opinion of Dr. Khurana. (*See* A.R. 60-61.)  Thus, for the same

3  reasons that the Court determined that the ALJ failed to properly reject Dr. Khurana's opinion, the

4  Court finds that the ALJ also erred in rejecting Dr. Stoney's opinion.[4]

5

6      Accordingly, on remand, the ALJ either must provide specific and legitimate reasons for

7  rejecting the opinions of Drs. Khurana and Stoney or factor those opinions into her assessment

8  of plaintiff's RFC.

9

10     **III.**   **The ALJ Failed To Properly Consider Plaintiff's Subjective Pain**

11          **Testimony And The Lay Witness Statements of Plaintiff's Sister.**

12

13     A.   Plaintiff's Subjective Pain Testimony

14

15      Once a disability claimant produces objective medical evidence of an underlying impairment

16  that is reasonably likely to be the source of claimant's subjective symptom(s), all subjective

17  testimony as to the severity of the symptoms must be considered.  Moisa v. Barnhart, 367 F.3d

18  885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991); *see also* 20 C.F.R. §§

19  404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated).  "[U]nless an

20  ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find

21  an applicant not credible by making specific findings as to credibility and stating clear and

22  convincing reasons for each."  Robbins, 466 F.3d at 883.  The factors to be considered in weighing

23  a claimant's credibility include:  (1) the claimant's reputation for truthfulness; (2) inconsistencies

24  either in the claimant's testimony or between the claimant's testimony and her conduct; (3) the

25

26        [4]     While the Commissioner now offers other reasons to explain the ALJ's rejection of

27  the opinions of Dr. Khurana and Dr. Stoney, the Court cannot entertain these post hoc
rationalizations.  *See, e.g.*, Orn, 495 F.3d at 630 ("We review only the reasons provided by the

28  ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not
rely.").

1    claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and
2    third parties concerning the nature, severity, and effect of the symptoms of which the claimant
3    complains.  *See* Thomas v. Barnhart, 278 F.3d 947, 958–59 (9th Cir.2002); *see also* 20 C.F.R. §§
4    404.1529(c), 416.929(c).

6       The ALJ found that "[a]fter careful consideration of the evidence . . . [plaintiff]'s medically
7    determinable impairments could reasonably be expected to cause the alleged symptoms."  (A.R.
8    56.)  The ALJ cited no evidence of malingering by plaintiff.  Nonetheless, the ALJ concluded that
9    plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms
10    are not credible" to the extent they varied from the ALJ's own RFC assessment.   (*Id.*)
11    Accordingly, the ALJ's reasons for finding that plaintiff was not credible with respect to her
12    subjective symptom and pain testimony must be "clear and convincing."

14       The ALJ rejected plaintiff's credibility, because:  (1) her symptoms do not correlate with
15    objective, medical findings; (2) she failed to demonstrate an increase in treatment or a worsening
16    of her impairments; (3) she continued working for years despite her spinal impairments and being
17    diagnosed with lupus; and (4) her daily activities are inconsistent with her alleged subjective
18    symptoms.  (A.R. 56, 61.)

20       The ALJ first rejected plaintiff's subjective symptom testimony based on her conclusion that
21    the "objective medical evidence (x-rays, MRIs, CT scans, EMGs and lab reports) do not support
22    [plaintiff's] allegations regarding the severity of her limitations because they are negative,
23    inconclusive, or reflect no worsening of her conditions." (A.R. 58.)  Assuming, *arguendo*, that the
24    objective medical evidence does not corroborate the degree of plaintiff's allegedly disabling
25    symptoms, this factor cannot form the "sole basis" for discounting plaintiff's subjective symptom
26    testimony.  Burch, 400 F.3d at 681; *see* Bunnell, 947 F.2d at 34 (noting that "[i]f an adjudicator
27    could reject a claim of disability simply because a claimant fails to produce medical evidence
28    supporting the severity of the pain, there would be no reason for an adjudicator to consider

1   anything other than medical findings").  Accordingly, because the ALJ's first ground cannot, by

2   itself, constitute a clear and convincing reason for discrediting plaintiff's testimony, the ALJ's

3   credibility determination rises or falls with the ALJ's other ground for discrediting plaintiff.

4

5       The ALJ's second reason for rejecting plaintiff's credibility is neither clear nor convincing.

6   The ALJ next rejected plaintiff's subjective complaints, because the "records do not reflect that

7   her impairments are worsening or prevent her from performing basic work activities" and the

8   "records, as discussed within, indicate improvement." (A.R. 56.)  However, this conclusion about

9   what plaintiff's records reflect fails to explain, with adequate specificity, how the evidence

10  undermined plaintiff's statements about her physical symptoms.  See Holohan, 246 F.3d at 1208

11  (ALJ's credibility finding that the "record in general indicates improvement" was not supported by

12  substantial evidence because "general findings are an insufficient basis to support an adverse

13  credibility determination"); see also Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007) ("The ALJ

14  must provide 'clear and convincing' reasons to reject a claimant's subjective testimony, by

15  specifically identifying 'what testimony is not credible and what evidence undermines the

16  claimant's complaints.'" (quoting Lester, 81 F.3d at 834)); Fair v. Bowen, 885 F.2d 597, 602 (9th

17  Cir. 1989) ("In order to disbelieve a claim of excess pain, an ALJ must make specific findings

18  justifying that decision.").  Moreover, the Court is unable to reconcile the ALJ's finding about

19  plaintiff's improvement with the medical evidence she cites within her decision, particularly as the

20  ALJ cites no evidence indicating that plaintiff's impairments were either improving or not

21  worsening.  (See A.R. 56-58.)  Indeed, plaintiff testified at the hearing that for her pain, her

22  dosage of morphine was recently increased, an indication that her pain was neither improving nor

23  stable. (A.R. 111)  Even assuming that there may have been some indication that plaintiff had

24  medically improved, it does not mean that plaintiff's impairments no longer seriously affected her

25  ability to function in a workplace.  See Holohan, 246 F.3d at 1205 ("That a person . . . makes

26  some improvement does not mean that the person's impairments no longer seriously affect her

27  ability to function in a workplace.").  Thus, this reason for rejecting plaintiff's credibility was

28  neither clear nor convincing.

1    The ALJ's third reason -- to wit, that plaintiff "continued working for years [after] treatment

2    for her spinal impairments and after she was diagnosed with Lupus"-- is unconvincing. (A.R. 61.)

3    At the hearing, plaintiff testified that she was diagnosed with lupus in 2008.  (A.R. 116.)  It

4    appears that plaintiff suffered from degenerative disc disease of the cervical and lumbar spine with

5    stenosis as late as October 2008.  (A.R. 100-01, 116.)  Plaintiff testified that the last time she

6    worked was in March of 2009, because that is "when [she] became disabled." (A.R. 110.)  Thus,

7    although plaintiff continued to work after she was diagnosed with lupus and treated for her spine

8    impairments, the Court finds that a willingness to try to work is not clearly probative of a present

9    ability to engage in such activity.  Further, there is no evidence that plaintiff worked after her

10   claimed disability date.  Thus, this is not a clear and convincing reason to find plaintiff's subjective

11   complaints incredible.  See, e.g., Perkins v. Astrue, 535 F. Supp. 2d 986, 993 (C.D. Cal. 2008)

12   (adverse credibility determination supported by finding that claimant engaged in substantial

13   gainful activity after alleged onset date) (emphasis added).

14

15   Finally, it is not clear whether the ALJ relied on plaintiff's daily activities to undermine her

16   credibility concerning her subjective complaints, but to the extent that she may have, the Court

17   will address it.  A claimant's ability to engage in some physical activities is not necessarily

18   inconsistent with a finding of disability.  See Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir.

19   1984).  Rather, an ability to take part in physical pursuits bears on a claimant's credibility only to

20   the extent that the level of activity is in fact inconsistent with the alleged limitations.  See Reddick

21   v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).  It must be noted that the ALJ's description of

22   plaintiff's daily activities is incomplete.  The ALJ noted that plaintiff does "household chores

23   (vacuuming, laundry), shops and cooks, pays bills and handles her own money, and drives for

24   transportation." (A.R. 61.)  The ALJ fails, however, to account for plaintiff's other statements

25   regarding her daily activities. (See supra, Section II(B)(1); see also A.R. 287-94.)  The ALJ thus

26   erred by failing to take into account significant qualifications regarding plaintiff's activities.  See

27   Reddick, 157 F.3d at 722–23.  Moreover, and critically, the ALJ fails to explain how plaintiff's

28   ability to do some household chores, cooking, and driving a car translates into the ability to

18

perform full-time work and renders plaintiff's testimony about her pain and symptoms unworthy of belief. *See* Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) (noting that the "mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability"); Smolen, 80 F.3d at 1283 n.7 ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication."). Therefore, this reason does not constitute a clear and convincing reason for finding plaintiff to be not credible.

For the aforementioned reasons, the ALJ failed to give clear and convincing reasons for discrediting plaintiff's testimony. Thus, on remand, the ALJ must either credit plaintiff's subjective symptom testimony or provide clear and convincing reasons why plaintiff's testimony is not credible.

B.   Lay Witness Statements of Elisabeth Beech

In evaluating the credibility of a claimant's assertions of functional limitations, the ALJ must consider lay witnesses' reported observations of the claimant. Stout, 454 F.3d at 1053. "[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to [the claimant's] condition." Dodrill v. Shalala, 12 F.3d 915, 918–19 (9th Cir. 1993); 20 C.F.R. §§ 404. 1513(d), 416. 913(d) ("[W] e may also use evidence from other sources to show the severity of your impairment (s) . . . Other sources include, but are not limited to . . . spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, and clergy."). "If an ALJ disregards the testimony of a lay witness, the ALJ must provide reasons 'that are germane to each witness.'" Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir.2009) (citation omitted). Additionally, "the reasons 'germane to each witness' must be specific." Stout, 454 F.3d at 1054.

1    Here, the ALJ gave "little weight" to the opinion of plaintiff's sister, Elisabeth Beech,

2    because:  (1) her opinion contradicts plaintiff's activities of daily living, medical treatment history

3    and work history; and (2) she is not familiar with the Agency's disability guidelines.  (A.R. 61.)

4

5    Because the ALJ rejected Ms. Beech's testimony on the same grounds she rejected

6    plaintiff's subjective pain testimony,[5] the Court finds that the same reasoning applies with equal

7    force in finding that the ALJ erred in properly considering Ms. Beech's statements.

8

9    On remand, the ALJ must provide germane reasons, if they exist, for rejecting Ms. Beech's

10   statements regarding her observations of the nature and extent of plaintiff's alleged impairments

11   and limitations, so that a reviewing court may know the basis for the ALJ's decision and have the

12   ability to assess the propriety of that decision.

13

14   **IV.    Remand Is Required.**

15

16   The decision whether to remand for further proceedings or order an immediate award of

17   benefits is within the district court's discretion.  Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir.

18   2000).  Where no useful purpose would be served by further administrative proceedings, or where

19   the record has been fully developed, it is appropriate to exercise this discretion to direct an

20   immediate award of benefits.  *Id.* at 1179 ("[T]he decision of whether to remand for further

21   proceedings turns upon the likely utility of such proceedings.").  However, where there are

22   outstanding issues that must be resolved before a determination of disability can be made, and

23   it is not clear from the record that the ALJ would be required to find the claimant disabled if all

24

25           [5]      The ALJ's reasons for rejecting lay witness testimony from Ms. Beech is the same
26   with the exception that the ALJ additionally rejected Ms. Beech's testimony, because she is
     unfamiliar with the Agency's disability guidelines.  However, the fact that a lay witness is not a
27   medical professional or other qualified expert is not a germane reason for rejecting otherwise
     competent lay evidence.  *See* Bruce, 557 F.3d at 1116 ("A lay person, ... though not a vocational
28   or medical expert, was not disqualified from rendering an opinion as to how [a claimant's]
     condition affects his ability to perform basic work activities.") (citation omitted).

the evidence were properly evaluated, remand is appropriate. *Id.* at 1179-81.

Remand is the appropriate remedy to allow the ALJ the opportunity to remedy the above-mentioned deficiencies and errors. *See, e.g.*, Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (remand for further proceedings is appropriate if enhancement of the record would be useful).  On remand, the ALJ must correct the above-mentioned deficiencies and errors.  After doing so, the ALJ may need to reassess plaintiff's RFC, in which case additional testimony from a vocational expert likely will be needed to determine what work, if any, plaintiff can perform.

**CONCLUSION**

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

DATED:  June 26, 2014

_Margaret A. Nagle_
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE

21